White, C. J.
These two cases were argued at the same time, and they have been considered and will be disposed of together, as they both involve the question of the constitutionality of the act of April 23, 1872, to authorize counties, townships, and the municipalities therein named, to build railroads, etc. 69 Ohio L. 84.
It is claimed by the counsel seeking to maintain these proceedings under the act named, that the’question as to its validity has already, in effect, been determined in the case of Walker v. The City of Cincinnati et al., 21 Ohio St. 15.
The act passed upon in that case, is widely different from the one now before us. The latter contains provisions and elements not found in the former. That act authorized a railroad to be built by a municipality, when it was found to be essential to its interest, as one of its public works. It was to be used and operated as other works of a public nature, in which it had a special interest, and which it was authorized to own and operate.
In the case referred to, of Walker v. The City of Cincinnati, the court held that it was competent for the legislature, under the general grant of legislative power, to authorize the entire construction of such a work, by a municipality having a special interest therein, and to empower the local authorities to provide the means’ therefor by taxation. And, further, that a work thus constructed was neither in violation of the express nor the clearly implied prohibitions of article 8, section 6, of the constitution. That the construction of the work in this manner, however unwise it might *77 be, did not involve the union of public and private capital or credit, nor the raising of money by the municipality for, or loaning its credit to, or in aid of other parties, incorporate or otherwise. That this is as true in regard to railroads so constructed, as it is in regard to water-works, gasworks, and other improvements of a similar nature which the municipalities may construct, but which require the employment of skill and labor to make them available for public use.
It is true that in the act passed upon in Walker v. The City, etc., authority is given the trustees as fast as portions of the line of road of which they are trustees, are completed, to rent or lease the right to use and operate such portions upon such terms as they may deem best; but such rights are to' cease and determine on the final completion of the whole line, when the right to use and operate the same is to be leased by them to such person or company as will conform to the terms and conditions which shall be fixed and provided by the council of the city by which the line of road is owned.
This power can not be exercised until after the work is completed, except for the purpose of getting the immediate-use of the finished portion during the time required to complete the entire work. The proprietary interest in the road when completed, is as fully in the municipality as that of any other of its public works. It is the road “ owned” by the municipality that is authorized to be leased. The public use for which the road was built, is to be preserved, and the power of leasing the right to use and operate it, is designed only as a mode of making such use available to the-public. If, under color of this authority, it should be attempted to divert the work from the purposes for which it was authorized, and to subordinate the public to private interests, the attempt would be unwarranted, and the courts-would be open to prevent or redress the wrong.
Every step in the public service requires compensation,, whether it be in discharging the duties of office, or in preserving and keeping in order, so as to be available for- *78 public use, all descriptions of public property. Compensation for services is as necessary as compensation for property.
The constitution does not forbid the employment of corporations, or individuals, associate or otherwise, as agents to perform public services; nor does it prescribe the mode of their compensation. And if it should be deemed wise and economical to authorize municipalities, who own waterworks, or gas-works, to lease them as a means of supplying the public needs, we know of no constitutional impediment.
But this is a different thing from investing public money in the enterprises of others, or from aiding them with money or credit. In one case, the whole proprietary interest is in the public, and its authority is paramount; while in the other, the reverse is true.
Whether or not the act now before us can be justified under the decision referred to, will appear from an examination of the provisions of the act.
Its validity is denied, on the ground that it violates section 6, article 8, of the constitution. That provision is as follows:
“ The general assembly shall never authorize any county, city, town, or township, by vote of its citizens or otherwise, to become a stockholder in any joint-stock company, corporation, or association whatever; or to raise money for, or loan its credit to, or in aid of, any such company, corporation, or association.”
It is but applying an axiom, to say that what the general assembly is thus prohibited from doing directly, it has no power to do indirectly.
In giving an exposition of this section, in Walker v. The City, etc., it is said in the opinion : “ The mischief which this section interdicts, is a business partnership between a municipality, or subdivision of the state, and individuals or private corporations or associations. It forbids the union of public and private capital or credit in any enterprise whatever. In no project originated by individuals, whether *79 associated or otherwise, with a view to gain, are the municipal bodies named permitted to participate in such' manner as to incur pecuniary liability. They can neither become stockholders nor furnish money or credit for the benefit of the parties interested therein. Though joint-stock companies, corporations, and associations only are named, we do not doubt that the reason of the prohibition would render it applicable to the case of a single individual.” And it was truly said, the evil would be the same to the public whether the transaction was with a single person, or with several persons associated together.
The first section of the act now in question declares that it shall be lawful for any county to construct a railroad, and to borrow, as a fund for that purpose, a sum not exceeding five per cent, on its taxable property, as two-thirds of the electors of the county, voting at a meeting called for that purpose, shall determine. Section 12 extends the provisions of the act to cities, incorporated villages, and townships:
The following is, substantially, the method or scheme prescribed for accomplishing this object. On presentation of a written request signed by the specified number of taxpaying electors, containing a specification of the termini of the proposed road, the amount to be appropriated toward its construction, and such other conditions and particulars as are not provided for in the act, the commissioners are required to call an election at which the electors are to vote on the proposition contained in the request. If the result of the election should be to approve the proposition, the commissioners are required to issue the bonds of the county for the amount authorized. For the payment of these bonds the credit of the county is pledged. They are to become due in not exceeding twenty years, and are to bear interest not exceeding eight per cent, per annum; and are to be deposited with the treasurer of state for the benefit of the parties interested.
The commissioners are also required, within thirty days after the proposition has been approved at the elec *80 lion, to advertise for proposals for the construction of the work; but the time of letting is not to exceed sixty days. When the time of letting comes, the act requires that the commissioners “ shall enter into contract with the lowest responsible bidder for the whole of said road, or with the party that will agree to build the greatest number of miles of road for the sum appropriated.
The commissioners are invested with no discretion. It is made their imperative duty to enter into the contract: if no one will undertake to build the whole road for the bonds, they must let the work to the party who will agree to take them and build the greatest number of miles. No pro.vision is made for securing the right of way to the county, township, or municipality on which the public money is to be expended. The bonds are only to be used in payment of “ labor performed and material furnished during the previous month, in pursuance of the contract,” except that fifteen- per cent, is authorized to be reserved until the contract is performed.
The contract is to be entered into and the bonds expended without respect to the character of the work, or what it may cost to complete it, or make it of public utility. Whether the public money be much or little, or the work be expensive or otherwise, in all cases alike, the amount is to be expended. What the expenditure may result in, is all the county, township, municipality, gets, upon the hypothesis that it was the intention of the act to authorize these local bodies, respectively, to build a railroad as one of its local public works. It is clear that such could not have been the intention of the legislature, nor can it be the understanding of the voters who act under it.
While a railroad constructed and operated is a public highway of the greatest utility, yet it is of a peculiar nature. It is the means of accomplishing, with greatly increased facility, the results designed to be accomplished by other descriptions of highways. As an agency to serve this purpose, it can not, however, be viewed in the same light as ordinary highways. A railroad can be made *81 subservient to the public, only under conditions entirely different from those of the common highway. It must be in a condition to be operated. A part of a railroad which is not in a condition to be used, can not, while it remains-in such condition, be said to be a highway or to serve any public purpose. To be available as a public way, it must be capable of being operated by motive power and cars,, under the direction of a single management.
But the tenth section is a constituent part of the plan or method provided by the act for accomplishing its objects. That section provides, that the “ county commissioners shall have power, and they are hereby authorized, to lease said road, constructed under the provisions of this act, before or after completion, .... or to sell the same-for such compensation and upon such terms as may be agreed upon by said commissioners and lessee or purchaser.
There is a proviso declaring that no such contract of lease or sale shall be valid until the same is ratified by a. majority of the electors voting at an election called for the purpose. This proviso has no bearing upon the question as to the authority of the legislature to pass the act. Whether valid or invalid, its validity can be neither impaired nor its invalidity aided by those acting under it.
Thus, by section ten, it appears the commissioners, or other public authorities operating under the act, are invested with authority to sell or lease the road either before or after completion. It would be within their power to sell what is called the road at any time; certainly after the making of the contract. Now, in such case, what is sold?' Substantially the right to use the public bonds to construct a work which becomes the property of the purchaser as-fast as it is built. What is to be paid for the right thus sold, is left to the discretion of the local authorities. It may be paid for by completing the work. Indeed, theamendatory act expressly declares that the consideration of the sale or lease may be the construction of the road.
This is, in effect, the same as if the purchaser had pro *82 jected the road to be built on his own account, and the local authorities had agreed to aid him to the amount of the bonds.
The act contains no provision requiring the road, after the public funds have been expended, to be completed. Nor in case of sale is there any provision requiring it to be maintained and operated. In the absence of such a provision, neither railroad companies, nor others owning railroads, can be required to maintain and operate them. 2 Redfield on Railways, sec. 191; 18 Eng. L. & Eq. 199; 25 Wis. 207.
But if the public money should be expended before the making of the lease or sale, the public authorities are, by the act, put, we might almost say, in complete subordination to the railroad company, or parties owning or controlling the other parts which are to make up the whole road. To everybody else it will be as useless as to the county or township whose money built it. If leased or sold at all, it will necessarily be to the parties or company who control such other parts. The local authorities, under the act, have no alternative but to let the work perish in its incomplete state, or lease or sell it on such terms as the parties named are willing to accept.
If a line of road is projected through several townships or counties, no concert of action is contemplated. The leasing or selling of the part which may be constructed by the funds of one locality, is wholly independent of the action of the other localities. The company that gets one link in the line, can control or defeat the whole.
The transaction which the statute authorizes, begins with a railroad projected in the name of one of the localities mentioned, to be built in part by taxation, and ends with a debt on the locality for its construction, and, if anything useful has been accomplished, with the road being substantially owned by a railroad company, to be operated or not, or disposed of as such company may find most for its interest.
This is accomplishing by indirection what it would be a *83 plain violation of an express provision of the constitution to do directly.
Where public credit or money is furnished, to be used in part construction of a work, which, under the statute authorizing its construction, must be completed, if completed at all, by other parties out of their own means, who are to own or have the beneficial control and management of the work when completed, the public money or credit thus used, can only be regarded, within the meaning of the constitutional provision in question, as furnished for, or in aid of such parties.
The extent of such aid can make no difference. The mandate of the constitution is, that such aids shall never be authorized. Whatever is furnished must be exacted by taxation; and whether the amount be large or small, to recognize the authority under which it is sought to be imposed, would be to deny the protection guarantied by the constitution to every tax-payer.
Nor will it do to say that the public money may be expended, and the road be neither leased nor sold. Taxes can be levied only for public purposes. The mere expenditure of the amount of public money authorized to be raised in building so much of a railroad as-could be built for that sum, without any authority to complete it or use it, could serve no public purpose.
Nor is this the case contended for in argument, of an act which is susceptible of two constructions, one of which would make it constitutional and the other not. We find this act capable of no other rational construction than the one we have given it.
Neither can we assent to the proposition that, although the act may authorize the accomplishing of an unconstitutional purpose, that it must, nevertheless, be presumed that it will, in fact, only be used to accomplish what can be done in accordance with the constitution.
The authority which it confers, clearly includes the unconstitutional purpose of aiding with the public credit, railroad companies and others engaged in the business of *84 building and operating railroads. If there are lawful purposes to which the credit might be applied, the act gives no means to the officers in whom the authority is vested, of discriminating between what is lawful and what is not. This unconstitutional element vitiates the whole authority.
It is not the case of a separate and independent unconstitutional provision in a statute which may be rejected, and yet the rest of the act be allowed to stand and have effect according to the legislative intention. On the contrary, the unconstitutional element constitutes an inherent and essential part of the authority conferred.
Private property, except when taken for public purposes, or by legitimate taxation, is as inviolable as personal liberty. If an act of the legislature should authorize a magistrate, for such cause as he might see proper, to order the arrest and imprisonment of a citizen, the act could not be upheld on the ground that it was to be presumed the magistrate would exercise the authority only for legal and constitutional causes of arrest. The authority in the case supposed would be entire, and the act wholly void. The principle is the same in regard to the act now under consideration.
The tenth section, in which the authority to sell or lease is found, can not be disregarded in determining the validity of the act; for without that'section it can not be presumed the act would have either been passed by the legislature or acted on by the people. The section constitutes a necessary part of the plan or scheme for accomplishing the objects intended by the act. Monroe et al. v. Collins, 17 Ohio St. 666, 684.
The court are unanimous in the opinion that the act is in conflict with section 6, article 8, of the constitution, and therefore void.
It may be that, without the aid of this law, projects may fail, which could, under it, have been prosecuted to successful and useful results. But this consideration can have no influence in a judicial tribunal invested with the high trust of seeing, in the administration of justice, that the cónsti *85 tution suffers no detriment, from whatever quarter or in whatever shape the threatened invasion comes.
It has not been found necessary to pass upon the other grounds of objection made to the act.
In the case of Kantner v. The Trustees, etc., the judgment of the court below will be reversed; and a perpetual injunction is ordered by this court in each case.